FOSTER, who sues, etc., *v.* SEYMOUR and Others.

*(Circuit Court, S. D. New York.* February 6, 1885.)

CORPORATION—ISSUE AND EXCHANGE OF STOCK FOR OTHER PROPERTY BY TRUSTEES—FRAUD—ACCOUNT.

Where the statute under which a company is incorporated authorizes the trustees to issue stock and exchange it for property, and declares that when exchanged such stock shall be taken to be full-paid stock and not liable to further calls; and the trustees, being the only members of the corporation, exchange the whole capital stock in payment for the purchase of mining property owned by themselves, and, after division and distribution of the stock among themselves, sell it as full-paid stock to innocent purchasers,—such purchasers cannot maintain a suit to compel the trustees to account to the corporation for a fraudulent disposition of its capital stock.

In Equity.

*W. F. Scott,* for plaintiff.

*H. M. Ruggles* and *T. W. Osborn,* for defendants.

WALLACE, J. The bill of complaint is filed by the complainant as the holder of certain shares of stock in the Central Arizona Mining Company against that corporation and its trustees personally to require the trustees to account to the corporation for a fraudulent disposition of its capital stock. The bill alleges, in substance, that the whole capital stock of the corporation, which was fixed and limited by the certificate of incorporation of the company at 100,000 shares of $100 each, was exchanged by the trustees of the corporation in payment for the purchase of mining property owned by the trustees personally, or some of them, the value of which did not exceed $100,-000, as the trustees knew. The bill further alleges that the trustees, after such exchange of the capital stock, divided and distributed it among themselves, and sold it as full-paid stock to innocent purchasers including the complainant; and the trustees realized large sums

of money thereby which they applied to their own use. The bill also contains allegations for the purpose of showing that the trustees exert entire control over the corporation, and that the corporation refuses to bring an action against them for relief in the premises. It is not alleged in the bill that when the stock of the corporation was exchanged for the mining property any part of the capital stock had been subscribed for, or that any part of it had ever been paid into the company, or that it represented any corporate property; but the bill alleges that the trustees issued it, and delivered it as full-paid stock to themselves in exchange for the mining property.

The statute under which the company was incorporated authorizes the trustees to issue stock and exchange it for property, and declares that when exchanged such stock shall be taken to be full-paid stock, and not liable to further calls. Laws N. Y. 1853, *c.* 333, § 2. The statute, however, permits the trustees to exchange stock to the amount only of the value of the property for which it is exchanged. Upon these facts the corporation has no right of action against the trustees.

The corporation lost nothing by the transaction disclosed by the bill, except the paper which was created and called capital stock. None of its capital was diverted. The scrip was not capital stock. The capital stock of a corporation is the money or property which is put into a corporate fund by those who subscribe for stock, and thereby agree to become members of the corporate body. Unless it represents capital contributed, or agreed to be paid in, it has no value. *Burrall* v. *Bushwick R. Co.* 75 N. Y. 216; *Sturges* v. *Stetson,* 1 Biss. 246. The property it received in exchange for the scrip had some value; certainly as much as the scrip had. There was no fraud upon the corporation. At the time the scrip was exchanged for the mining property, the trustees were all there was of the corporation. There were no stockholders unless they were stockholders. What was done was done by the corporation. By the exchange the corporation got the mining property, and gave it back again to those from whom it got it, divided into 100,000 shares of the nominal value of $100 each. *The Ambrose Lake Tin & Copper Min. Co. (Ex parte Taylor,)* L. R. 14 Ch. Div. 390; *Re Seamless Box Co.* L. R. 17 Ch. Div. 46.

The transaction as alleged was a fraud upon the public. It was equivalent to an overissue of stock by a corporation to its stockholders. It was calculated to lead parties, dealing with the corporation in ignorance of the facts, to believe that it had a paid-up capital stock of $10,000,000, and representing a corporate fund of that amount invested in mining property. By putting out the scrip, the trustees represented to the public, who have no means of knowing of the private contracts made between a corporation and its stockholders, that the capital stock had been subscribed for and paid in. It was not a fraud upon stockholders, however, because there were none; nor necessarily upon persons subsequently becoming stockholders, because the stock was full-paid stock, and not liable to any further calls in

the hands of those who might purchase it. *Scovill* v. *Thayer*, 105 U. S. 143. A purchaser of the stock would not be injured by the transaction unless he paid more for it than it was worth; and every purchaser would stand upon the particular circumstances of his purchase. If the original transaction, in connection with the special facts of a purchase of stock, should operate as a fraud upon a purchaser, the cause of action would be his, and not that of the corporation. The fraudulent character of the transaction was imparted to it by the corporation itself; that is, by those who represented all there was of the corporation. The remedy of the complainant, if he has been deceived into the purchase of stock by false representations as to its value, is against those who have misled him. Even if he could recover against the corporation or against the trustees, (see *Fosdick* v. *Sturges*, 1 Biss. 255,) the corporation has no cause of action against the trustees.

Upon the argument of the demurrer, the opinion was expressed that the bill was defective in not alleging the necessary efforts of the complainant to set the corporation in motion to seek such redress as it ought to seek, within the rule declared in *Hawes* v. *Oakland*, 104 U. S. 460, and subsequent cases in the supreme court. It has been deemed proper, however, to meet the main question in the case in disposing of the demurrer.

The demurrer is sustained.