Shipman, Circuit Judge.
This is a motion by the defendants for a new trial of an action at law, wherein a verdict was rendered for the plaintiff.
In February, 1886, David Robison, Jr., James M. Ashley, John Cummings, William Baker, all of Toledo, Ohio; L. G. Mason, Edward Middleton, and A. W. Wright, all of the state of Michigan,—formed a corporation by the name of the Toledo, Saginaw & Muskegon Railroad Company, to build a railroad of 96 miles in length from Muskegon, Mich., to a point near Ashley, in that state, where it would intersect *727 with the Toledo, Ann Arbor & North Michigan Railroad. At the time the said corporation was formed, Messrs. Robison, Ashley, Cummings, and Baker each subscribed for 500 shares of stock, Mason and Wright each subscribed for 50 shares, and Middleton subscribed for 1 share. Wright’s and Middleton’s subscriptions were merely formal, to enable the corporation to comply with the laws of the state of Michigan, and have a sufficient number of Michigan directors, and the plaintiff claims that Mason’s subscription was of the same character. Checks for 5 per cent, of the amount of the subscription were delivered to the treasurer, which were not intended to be collected or paid, and which were subsequently returned to the makers. Articles of association were signed, the seven subscribers were chosen directors of the company, Mr. Robison was chosen president, and the coporation, having thus formally complied with the statutes of Michigan, was deemed to have a legal existence. Stock certificates were issued for the purpose of enabling the directors to qualify, but no more stock was issued until it became necessary to perform the contract with the defendants, which will be hereafter stated, and then it was all issued in the name of and delivered to them. Assessments were neither made nor paid upon the original 2,101 shares, nor were calls made in the ordinary way upon stockholders, but, when money was needed, Robison would request each of the other Toledo promoters of the enterprise to pay one quarter of the required and designated sum, which was done.
It is manifest that outside of local aid, by way of gifts or deeds for the benefit of the road, they furnished the material financial strength which was requisite for the development of the enterprise, and they claim that they were the only persons who were financially responsible for its success or failure, and who were and continued to be the bona fide stockholders in the corporation. Mr. Mason insists that he was a stockholder, and that it was by the others understood that he was to have 20 per cent, of whatever profits might arise to the stockholders or directors, after the construction of the road. Whether he was or was not an actual stockholder, and whether or not it was understood that he was to participate with the other four in the profits of the enterprise in case of success, or bear the losses in case of failure, could not be decided in this case. If he was a stockholder, he found and now finds no fault with contracts for the building of the road by which stockholders or directors were to have profits. So far from seeking to set aside contracts which his associates made, he craves to participare in their benefits. The road was built or procured to be built in the name and under the form of a corporation, but the enterprise was conducted by and for the exclusive benefit of all the actual stockholders, viz., the four Ohio gentlemen and Mr. Mason, if he was acting in conjunction with them, or without him, if his interest was, like that of the other Michigan stockholders, merely nominal, and not actual. The contract for the division of profits was not made to shut out Mason-if he was a stockholder, but was made upon the theory that he did not want to be a stockholder.
On October 2, 1886, the railroad company, by its president, entered *728 into a.contract with the defendants, W. V. McCracken & Co.,.by which it agreed to cause a line of railroad from Muskegon, Mich., to a point near Ashley, in that state, to be surveyed and located, and to procure the rights of way and lands for that purpose, and to procure the roadbed to be graded, and adequate supply of cross-ties to be delivered along the line of the railroad, and to have the same completed and in readiness for the laying of the cross-ties by August 1,1887. McCracken & Co. agreed to furnish materials for and construct all culverts, trestle work, and bridges, to lay the cross-ties, and to construct and complete the superstructure of said road and to equip it by January 1, 1888. The railroad company was t'o deliver to McCracken & Co., in payment of the materials and work, certificates for $1,600,000 of its full-paid stock and $1,600,000 of its first mortgage bonds, which were all its stock and all its bonds, until the extension of its road beyond the easterly terminus thereof. Thus the entire capital stock and the entire issue of bonds were to be delivered to McCracken & Co.
On the same day, and contemporaneously with the contract just named, McCracken & Co. agreed with the plaintiff, Willard F. Robison, who is declared by him to have been acting in behalf of his father, David Robison, Jr., and Messrs. Ashley, Cummings, and Baker, that, if the conditions of the foregoing contract were complied with by the railroad company, they will pay to him one half of the net profits realized by the contractors from the performance of the contract out of the proceeds of the stock and bonds. As the entire capital stock and bonds of the company were to be delivered by the railroad company to McCracken & Co., it is manifest that the substructure was to be paid for in some other way or some other funds, either by said corporation or by the persons for whom the plaintiff was acting; and as the plaintiff was to receive no part of the profits unless the conditions of the building contract were performed by the corporation, they obviously were under a very strong inducement to see to it that the contract was performed. The railroad corporation proceeded with its part of the contract, the contractors entered upon the work of constructing the superstructure, and on April 5,1888, work thereon was nearly completed. It had been in running order, and was running for traffic during the winter of 1887-88. On April 5, 1888, McCracken & Co. were engaged in negotiations with the Grand Trunk Railroad Company to purchase the entire stock and bonds of the railroad, which negotiations were known and approved by David Robison, the president of the new company. He was desirous that the amount of net profits which he and his associates were to receive should be forthwith determined, and a verbal agreement was reached that McCracken & Co. should pay, without a formal accounting, the sum of $150,000, as the proportion of net profits which were to be paid under the contract of 1886. The agreement was reduced to writing, and was expressed in the following manner. McCracken’s proposition was:
“That in lieu of the profits therein provided for, that is, provided for in the contract of October 2, 1886, we shall pay to you the gross sum of $150,000, *729 to be paid as follows: Our promissory note for $20,000 of this date, payable six months after date; our promissory note of this date for $30,000, payable nine months after date, and $100,000 to be paid by us two years from May 1, 1888, or as soon before that time, ”—and so on.
The letter of acceptance is as follows:
“I am willing to make the modification you suggest, and hereby accept the proposition and oiler you make in your letter of to-day, above referred to, in lieu of said contract, and all conditions and obligations of the former contract are hereby canceled, and your proposition of to-day is accepted in lieu thereof. ”
The defendants paid the plaintiff $50,000 as the two notes therefor respectively matured, but refused to pay the $100,000 when it became due; whereupon the plaintiff brought this action of assumpsit upon the second contract to recover that sum. As a defense upon matters of fact, the defendants alleged that David Robison had induced them to enter into the contract of 1888 by misrepresentations in regard to the amount due for unpaid rights of way and in regard to the amount of unperformed work. The jury found for the plaintiffto recover $100,-000, less $7,503.75, one half the amount paid by the defendants for the assignment of a judgment in favor of one Glann against the railroad company. The defense, as matter of law, was the invalidity of the contracts of 1886 and 1888, because by the original contracts four directors had secretly provided for one half of the profits which should arise out of the construction of the road, and it was claimed there could be no recovery, because, the contract being void, no action could be maintained upon it or upon its successor. ' The defendants invoke the aid of the principle which denounces the action of directors of a corporation who, professing to be its agents,' and to be contracting in its behalf, secretly agree for a private and personal benefit to themselves, or agree to sell their official influence for personal gain, and assert the just doctrine that “ no action can be maintained on a contract, the consideration of which is either wicked in itself or prohibited by law.” Armstrong v. Toler, 11 Wheat-. 258. The decisions of the courts of the United States have been most strenuous in demanding that the directors of corporations shall act disinterestedly in contracts which they make in behalf of the corporation for which they act, and in setting aside tainted contracts which the corporation refused to abide by, or in setting aside contracts between a director or an agent and a third person for the sale of official influence. Wardell v. Railroad Co., 103 U. S. 651; Thomas v. Railroad Co., 109 U. S. 522, 3 Sup. Ct. Rep. 315; Woodstocic Iron Co. v. Richmond & D. Extension Co., 129 U. S. 643, 9 Sup. Ct. Rep. 402; West v. Camden, 135 U. S. 507, 10 Sup. Ct. Rep. 838; Providence Tool Co. v. Norris, 2 Wall. 45.
It is manifest that the facts in this case are of a different character from those which have ordinarily marked contracts which are the subject of just rebuke by courts. The corporation which entered into the construction contract was one in form only, and the agreement for -construction and division of the profits was, in fact, made by all the *730 stockholders, if Mason was not a stockholder. But, assuming the existence of Mason’s character as a stockholder, and that an exorbitant contract of the entire body of stockholders for their own pecuniary benefit can be seasonably attached by existing creditors, it is well settled that, as a general rule, contracts of a corporation, which were made by directors who obtained a personal pecuniary benefit thereby, are not, on that account alone, void, but are voidable at the election of the parties who-are affected by the fraud. This is clearly announced in Barnes v. Brown, 80 N. Y. 527; Barr v. Railroad Co., 125 N. Y. 263, 26 N. E. Rep. 145; Oil Co. v. Marbury, 91 U. S. 587; and Thomas v. Railroad Co., 109 U. S. 522,3 Sup. Ct. Rep. 315. In the latter case it is said, in-substance, that those for whom the agent was acting have the option to-avoid such a contract, but until they exercise their option, and seasonably show that it is their purpose not to submit to the act of the agent, the contract is in existence, and is not a nullity.
In this case, Mason, the remaining stockholder at the time, has not dissented, but desires to enjoy the contract. The corporation has never dissented. McCracken & Co., to whom the whole stock was issued, made both contracts, paid $50,000 upon the contract of 1888, the last payment being nine months after its date. Neither creditors nor the present stockholders have ever dissented. The case clearly falls within the general rule which has been cited. It contains no circumstances which create an exception, and make the contract one which is absolutely void. The condition of the defendants is this: They made a voidable contract with the plaintiff, which has not been avoided. The contract is an executed one, the defendants received and sold the entire stock and bonds of the company, and have the fruits of the contract, a part of which they have paid, and the residue of which they refuse to-pay upon the ground that the contract was illegal in its relations to the corporation. Cases may arise where a court will have nothing to do-with the controversies in regard to the proceeds of a business of an inherently corrupt and wicked character, but this is not one of them. The weakness of the defendants’ position is clearly disclosed in McBlair v. Gibbes, 17 How. 232; Brooks v. Martin, 2 Wall. 70; Planters' Bank v. Union Bank, 16 Wall. 483; and Railroad Co. v. Durant, 95 U. S. 579. In the latter case the court said: “The appellee cannot claim adversely to those for whom he acquired and holds' the property. The rights of others, if such rights exist, do not concern him. He cannot vicariously assert them.”
The defendants’ next point is that the court should have charged that,, if the jury found that the defendants entered into the contract of 1888 by means of fraudulent misrepresentations, the plaintiff could recover nothing. The contract had not been rescinded. The defendants did not disaffirm, but set up the misrepresentations in defense, to reduce the-plaintiff’s demand to the extent of $60,000. They could disaffirm the-contract, or seek to recoup the damages arising out of the fraud. “By proving the fraud and damage, the vendee may reduce the demand, where his injury is less than the price paid, and where it is equal or *731 greater he may defeat the action altogether. ” Whitney v. Allaire, 4 Denio, 554. In this case, the damages, as claimed, did not equal $100,000.
The defendants’ remaining point is that a new trial should.be granted because the jury allowed one half of the amount paid for the Glann judgment, whereas, if they found for the defendants upon that item, the whole should have been allowed. The jury were instructed, if they found that any sums were to be deducted from the $100,000, on the ground of misrepresentation, to state separately the amount which they found upon the three items which were claimed by the defendants, viz.,— amounts paid by them for grading, right of way, and the Glann judgment. The jury returned a verdict for $100,000, with interest, less $7,503.75, with interest, and were inquired of what that amount was for. The reply of the foreman did not show, to my mind, that the jury found for the defendants upon the subject of misrepresentations, but were of opinion that there were equities in favor of the defendants upon the Glann judgment, which should be worked out by allowing them one half of the amount which has heen paid. That part of the verdict was a compromise. Upon a motion for a new trial of an action, in a case involving $100,000 and which occupied 10 days, I am not disposed to set aside the verdict because the jury were illogical in respect to $7,500, especially as the plaintiff had an equal right to say that he is the sufferer by the compromise. The motion for a new trial is denied.