## McCRACKEN et al. v. ROBISON.

(Circuit Court of Appeals, Second Circuit. August 1, 1893.)

**1. CORPORATIONS—CONTRACTS BY DIRECTORS WHO OWN ALL THE STOCK — LEGALITY.**

Directors who own all the stock of a corporation are not within the rule prohibiting persons in a fiduciary relation from contracting for their own advantage in the name of the beneficiaries, and such a contract, made in the name of the corporation by the unanimous consent of the directors, is not invalid as against public policy.

**2. EVIDENCE—ERRONEOUS ADMISSION CURED — BEST EVIDENCE SUBSEQUENTLY PRODUCED BY OBJECTING PARTY.**

Where the issue is as to the real ownership of railway stock, any error committed in permitting plaintiff to give orally the names of all the original subscribers, and to show that subscriptions made in the name of certain persons were in fact made for and paid by others, is cured when defendants themselves produce the subscription book.

**3. SAME—RELEVANCY—MATTER NOT ALLEGED.**

In an action to recover on a contract for the construction of a railroad, evidence as to alleged false representations, which are not averred in the pleadings, should be excluded.

In Error to the Circuit Court of the United States for the Southern District of New York.

At Law. Action by Willard F. Robison against William V. McCracken and others for breach of a railway construction contract. Judgment was given for plaintiff. Defendants bring error. Affirmed.

For decision on motion for new trial, see 52 Fed. Rep. 726.

M. I. Southard, for plaintiffs in error.

Rush Taggart, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The plaintiffs in error were defendants in the court below. On the trial the jury rendered a verdict for the plaintiff. The principal assignment of error presents the question whether the promise upon which the action was founded was void because of an unlawful consideration. The suit was brought to recover of defendants a share of the profits made in building a railroad for the Toledo, Saginaw & Muskegon Railway Company. The nominal plaintiff really represented four persons,—Robison, Jr., Ashley, Baker, and Cummings. These four persons were the promoters of the enterprise for building a railroad from Muskegon to Ashley, in the state of Michigan. One Mason was associated with them to some extent, and insists that he was to

be interested to the extent of one-fifth of any profits they might derive from it. These persons organized the railway company, subscribed for the proportion of stock required as a preliminary by the laws of Michigan, and made themselves and some of their friends directors. They procured rights of way and local aid in the form of donations of land or money to the enterprise, and with such assistance and their own moneys undertook to furnish the roadbed and the cross-ties for the whole road, ready for laying the track and completing the superstructure. They then entered into a contract in the name of the railroad company with the defendants to complete the building of the railroad and equip it ready for business. By this contract the defendants were to have all the capital stock of the corporation and the whole issue of its first mortgage bonds for building the railroad. Contemporaneously. the promoters entered into another contract in the name of the plaintiff with the defendants by which the latter agreed that if the provisions of the first contract were carried out the plaintiff should receive one-half the net profits realized by them from the proceeds of the sale of the stock and bonds after reimbursing themselves for the cost of completing and equipping the railroad. After the road had been built and equipped, but before the bonds had been sold, the defendants agreed to pay the plaintiff in notes and money, and the plaintiff agreed to accept $150,000 in full payment and discharge of all claims against the defendants under the second contract. This action is founded upon that promise, and is brought to recover the balance remaining unpaid of the $150,000.

It is insisted for the defendants that, because the promoters were directors of the railroad company at the time the contracts for the building of the road and the division of the profits were made, the latter contract was illegal, and against public policy, and did not afford a good consideration for the subsequent promise upon which the action is brought. They invoke the rule which forbids fiduciaries to make contracts or engage in transactions in which their private interests may conflict with the interests of their principals, and contend that a contract made for a corporation by its directors with a view of obtaining a private advantage for themselves at the expense of the corporation is not only voidable at the election of the corporation as fraudulent, but is unlawful, as contrary to public policy. We fail to see how the doctrine which is invoked has any application to the facts of the present case. Treating the two contracts as one transaction, conceived for the purpose of enabling the promoters to make a profit out of the construction of the railroad, we fail to see how the public, or third persons, were to be injuriously affected, or could have any just reason to complain. The promoters were not acting as fiduciaries, except perhaps as they had impliedly promised to use the aid which had been donated towards the building of the road. It is not pretended that they did not use the donations legitimately. Certainly the contracts did not contemplate any misapplication of them. The promoters were to furnish the roadbed upon which the defendants were to build the

superstructure. This they did, using not only what moneys were donated to them, but a considerable amount of their own. When they entered into the contracts they owned the corporation and all its stock, and represented only themselves. While directors in name, they were principals in fact. The corporate organization was the machinery which they had brought into existence for carrying out the enterprise. If they had seen fit, they might have built the road themselves, and sold the stock and bonds, and kept the proceeds, and no one could have successfully challenged their right to do so. Instead of building the road themselves, and realizing all the profit they could from the sale of the stock and bonds, they preferred to contract with the defendants to accomplish the same general result. If it was an improvident arrangement, they were the only losers. If it was calculated to defraud anybody, they were the only possible victims. A quite similar state of facts was considered in the case of Barr v. Railroad Co., 125 N. Y. 263, 26 N. E. Rep. 145, and the court used the following language:

"All the stock and bonds were issued in payment for the construction of the railroad, and were taken by a syndicate of persons who assumed the contract for the work. It is true that the syndicate was made up of members of the board of directors, but, as the members of the syndicate were practically the company, and composed the whole number of stockholders, there was no one to object, and the manner in which they chose to divide up their interests in the proprietorship of the corporation and to represent them in shares concerned only themselves. No principle of law forbade the company agreeing to pay for the construction of its railroad in the way or in the amount it did. If the company's directors were interested in the work and profits of construction, and evaded a direct contract through the form or device of an intermediary contractor, that was a matter for the company or for its stockholders to take hold of. But the stockholders and members of the syndicate were the same persons, and, however wrong the transaction might be if other persons were concerned, here no injury was effected to any one interested in the corporation."

The defendants, by confounding names with things and form with substance, have built up a theory to shelter themselves from performing their own part of the contract which is as unsound as their own conduct is dishonest. There was no error in the refusal of the trial judge to instruct the jury as requested by the defendants that the promise sued upon was void.

The conclusions thus reached dispose of all the assignments of error which have been argued at the bar, except some with respect to the admission of evidence. The plaintiff was permitted to give the names of all the original subscribers for the stock of the corporation, and to show that the subscriptions which were made in the names of persons other than the promoters were in fact made for the promoters, and the payments therefor were made by them. If there was any error in admitting this testimony against the objection of the defendants that the subscription book was the best evidence, that error was cured when, at a later stage of the trial, the defendants themselves produced the subscription book. It was entirely competent to show that some of the subscribers were

.merely the agents of the promoters. Error is also assigned be-
cause of the exclusion of certain evidence offered by the defendants
for the purpose of showing what representations were made to them,
prior to the execution of the construction contract, concerning the
resources possessed by the railway company to enable it to perform
its part of the contract, and to show that the defendants relied on
these representations. There was no averment in the answer that
the defendants were induced to enter into that contract by any mis-
representation, and the evidence was apparently offered only for the
purpose of raising an issue which was not tendered by the pleadings.
We think it was properly excluded.

The judgment is affirmed.