### OLD DOMINION COPPER MIN. CO. v. LEWISOHN et al.

#### (Circuit Court, S. D. New York. February 24, 1905.)

CORPORATIONS—STOCKHOLDERS—FRAUD OF DIRECTORS.

 Where promoters of a mining corporation caused the same to be organized with dummy directors, and caused it to purchase certain mining claims of the value of $5,000 in consideration of 30,000 shares of the corporation's capital stock of the par value of $25 a share, such promoters were the only stockholders, and the corporation was not thereafter entitled to rescind the transaction.

 [Ed. Note.—Acts of corporators and promoters, see note to Yeiser v. United States Board & Paper Co., 46 C. C. A. 576.]

In Equity. On demurrer to a bill of complaint against the executors of Leonard Lewisohn, deceased.

Edward Lauterbach, in support of demurrer.
Louis D. Brandees, opposed.

LACOMBE, Circuit Judge. It was conceded by complainant upon the argument that the bill prayed no relief except rescission of a contract for the sale of certain mining rights and a parcel of real estate in Arizona. Irrespective of such concession, the court would be inclined so to construe the bill. Therefore the objection that it is multifarious cannot be sustained.

The demurrer asserts that the complainant has not by the bill stated such a case as entitles it to have such contract and sale rescinded. This sufficiently challenges the equity of the bill. The facts as averred in the bill are as follows: The deceased, Leonard Lewisohn, and one Albert S. Bigelow were the promoters of the complainant company, and caused it to be organized under the laws of New Jersey on July 8, 1895, by seven persons selected and employed for said purpose, none of whom had any actual interest in the corporation, or acted in the formation thereof other than as the representative and agent of the promoters. Forty shares were nominally subscribed and paid for by these persons, but, in fact, all of said subscriptions were made for the benefit and at the request of Bigelow and Lewisohn, and each subscription was paid for by them. The company having been organized, elections for officers and directors ensued, as a result of which, on July 11, 1895, Bigelow and Lewisohn both became directors, and Bigelow the president of the company. Prior to July 11th they had become the

owners of several mining claims and a parcel of real estate in Arizona, which were worth on that day, as the bill alleges, not more than $5,000. On that day, at a directors' meeting attended by themselves and two of their dummy directors, they sold and conveyed to the corporation the said mining claims and real estate for 30,000 shares of the capital stock of the par value of $25 a share. Thereafter, at times not specified, additional shares of capital stock (to the amount of 20,000) were from time to time offered and sold to the public at par, to obtain working capital. The bill also alleges a similar sale, for stock, on July 11th, of a mine owned by the promoters, at an excessive valuation, but no relief is prayed as to that transaction. The prayer of the bill is that the sale of the mining claims and real estate be rescinded, the property reconveyed, and the shares of stock returned or accounting had therefor, or, in the alternative of rescission, that the court will ascertain the amount of damages suffered by the complainant, and decree therefor.

Whether the contract for the sale of the real estate was voidable, so as to give the corporation the right to rescind or to demand damages, must be determined under the conditions which existed when it was made. Ordinarily, when a director or promoter contracts to sell property to his corporation, the corporation not being independently represented, it may rescind the contract, upon the theory, of course, that the relation between the parties is fiduciary, and that the other stockholders and subscribers to the stock are to be protected against an abuse of trust. But where there are no other stockholders nor subscribers, there is no one who is deceived, no stockholder or subscriber who is defrauded, since all the profit put into one pocket by the "faithless" directors is taken out of their other pocket as the sole stockholders. This principle is abundantly established by decisions controlling here, so it will be unnecessary to cite numerous authorities from other courts. In Foster v. Seymour (C. C.) 23 Fed. 65, which was decided in this court (Wallace, J.), the facts were very similar, except that the sale was for scrip, the stock not having yet been issued. The court said:

"There was no fraud on the corporation. At the time the scrip was exchanged for the mining property, the trustees were all there were of the corporation. There were no stockholders unless they were stockholders. What was done was done by the corporation. By the exchange the corporation got the mining property, and gave it back again to those from whom it got it, divided into 100,000 shares of the nominal value of $100 each."

And it held that whether or not a subsequent purchaser of stock could recover against those who had misled him—against the corporation or the trustees—"the corporation has no cause of action against the trustees." Subsequently the same question came before the Court of Appeals in this circuit (McCracken v. Robison, 57 Fed. 375, 6 C. C. A. 400), where, as the court expressed it—

"When they entered into the contracts they owned the corporation and all its stock, and represented only themselves. While directors in fact, they were principals in name."

It was held that in such a case the rule prohibiting persons in a fiduciary relation from contracting for their own advantage in the name of their beneficiaries had no application.

This demurrer to the bill is well taken, and it is therefore unnecessary to discuss the special demurrer as to defect of parties. The bill is dismissed, with costs.