RUDOLPH KLEYBOLTE ET AL. V. THE CINCINNATI, HAMILTON & DAYTON RAILWAY COMPANY.

1. The statute (R. S., Sec. 3133), rendering void all capital stock, bonds, notes or other securities of an incorporated company, purchased by a director thereof at .less than the par value of the same, does not apply to the bonds, etc., of another independent company, acquired by the first named company in the ordinary course of its business.
2. While all transactions of directors in their own interest with the property and affairs of their company are to be closely scrutinized, they may be upheld where no element of deceit or unfairness is shown; and more especially is this true where the circumstances render it at least possible that the transaction may involve a benefit to the holding company.

HOSEA, J.

Heard on demurrer to cross-petition.

To a petition declaring upon promissory notes of the defendant to the amount of forty thousand dollars, the defendant files a cross-petition alleging that on July 7, 1904, it was the owner of thirty-three hundred $1,000 bonds, one of the obligors of which bonds was the Toledo Railway & Terminal Company; that said bonds were secured by mortgage to the Commonwealth Trust Company of St. Louis; and that payment of the principal and interest of said bonds was guaranteed by the defendant and by the Pere Marquette Railroad Company, jointly and severally; and that

thereafter, in consideration of said guaranty, the plaintiff firm by contract with defendant purchased twenty-five hundred of said bonds at $975 each, with accrued interest, said price being less than the par value of the bonds.

The cross-petition then avers that Rudolph Kleybolte, one of the partners in the firm of Kleybolte & Company, was at the date of said transaction one of the directors of the defendant company, and that by reason of the premises the said parties, partners, etc., became indebted to it in the sum of $95,000, with interest, being the difference between the price paid for said bonds and the par value thereof, which sum the defendant pleads as a set-off to this action, and prays judgment for the difference between said sum of $95,000 and the amount sued for. The sufficiency of this cross-petition is challenged by a general demurrer.

A set-off is defined in our practice code as follows:

"5071. A set-off is a cause of action existing in favor of a defendant and against a plaintiff, against whom a several judgment might be had in the action and arising on contract or ascertained by the decision of a court, and can only be pleaded in an action founded on contract."

The cause of action set forth in the cross-petition is primarily against Rudolph Kleybolte, one of the plaintiff firm, and is claimed to arise out of his relation and capacity as director of the defendant company under a section of the Revised Statutes of Ohio relating to railroad companies, reading as follows:

"Sec. 3313. All capital stock, bonds, notes or other securities of a company, purchased of a company by a director thereof, either directly or indirectly, for less than the par value thereof, shall be null and void."

The theory of the cross-petition, as advanced in argument, is that the bonds in this case became, by the guaranty, "securities of the company"; that Rudolph Kleybolte, one of the plaintiffs, being a director, and Section 3313 having set a price upon such bonds for less than which a director can not buy them, the director, having bought such bonds

at less than the statutory appraisal, the law raises a promise to pay for them at the statutory price.

The question as presented upon this demurrer rests upon the colorless and bare allegation of a purchase at a discount, and upon the wording of the statute. No element of secrecy or unfairness is pleaded and the case rests simply on the unlawfulness of the act of purchase *per se*. The statute simply makes a sale to the director at a discount unlawful in terms prescribing a penalty therefor, namely, that the "security" (being a chose in action involving an obligation of the company) "shall be void," that is to say, unenforceable against the company.

It is claimed that the word "void" as used in the statute means "voidable at the election of the company," and reference is made by way of illustration to the construction early placed upon the statutes relating to conveyances in fraud of creditors; but this rests upon quite a different basis and involves essentially different reasoning.

Section 3313 in its original form was the second section of an act passed in 1852 "relating to the sale of bonds of railroad companies," etc., and reads as follows:

"Sec. 2. No director of any railroad company shall, either directly or indirectly, purchase any shares of the capital stock or any of the bonds, notes or other securities of any railroad company of which he may be a director for less than the par value thereof; and all such stocks, bonds and notes or other securities that may be purchased by any director for less than the par value thereof shall be null and void."

In the subsequent revision of the statutes this section was condensed to the present form as first quoted above, which involves no change of meaning, as will be seen on comparison. Section 1 of the original act provided that the directors of any railroad company authorized to borrow money and to execute bonds or promissory notes therefor were *"hereby authorized to sell, negotiate, mortgage or pledge such bonds or notes, as well as any notes, bonds, scrip or certificates for the payment of money or property which*

*said company may have heretofore received or shall here-after receive,"* etc., *"for such prices as in the opinion of the directors will best advance the interests of the company \* \* \* and the sale shall be valid if sold at a discount, and such securities shall be as binding as if sold at their par value."*

Thus reading Section 3313 in its place and sequence, the intent of the lawmaking power is made manifest, and it becomes clear that the statute as a whole and in its parts has reference to the *obligations of a company issued by itself to raise money or to acquire property for the accomplishment of purposes of its creation, and not other property acquired in the ordinary course of its business (Rhodes v. Woldy, 46 O. St., 234).* The rights of corporations with respect to their own issues of stock and other securities have always been jealously guarded both by the statutes and by the courts, but it does not follow that the same strict rules apply arbitrarily to acquired property. It is obvious that the Legislature would have no power to make the bond or other security of a third party void under the circumstances of the present case.

If this construction of the statute is correct, the claim that the bonds become the securities of the defendant company by the guaranty is also untenable. The bonds still remain the bonds of the issuing company, secured primarily by mortgage upon its own property. The obligation of defendant company in relation thereto is purely collateral and secondary, and shared with another. Its obligation, moreover, is entirely contingent and could not form the subject of a set-off in its own behalf. *Follett, Adm'r, v. Buyer, 4 O. S., 587 (592).*

And it would seem to follow that an endorsement of guaranty could not impress upon the bonds such a character, or such a relationship to itself, as to bring them within the spirit of the law, as it certainly does not bring them within the letter. Nor can the terms of such law operating in respect of direct issues of the company itself be said to fasten an arbitrary value upon securities of another company acquired in the ordinary course of business.

It is difficult to see how under any construction of the statute, or by the application of any rules recognized by courts of law or equity, the transaction here can be said to raise a contract by implication upon which a set-off may be founded.

The case of *Norden* v. *Jones*, 33 Wis., 605, which may be taken as a type of others on which reliance is placed in argument, was an action of trespass *quare clausum fregit* to recover damages to the realty for a wrongful entry. It is familiar law that in cases of such a nature the tort may be waived and recovery be had upon the implied agreement to pay for the damage wrongfully done. But how can a tort—which is a civil wrong independent of contract —be predicated upon an act in which both parties participate and to which both freely consent, and where no fraud is charged? It must be conclusively presumed here that both parties knew the law, and it is manifest that both participated with full knowledge in the act out of which liability claimed arose.

If the act be unlawful, the case is analogous to that of money lost at gambling, in which case the statute in that behalf gives to the loser a right to recover the money lost. But this right is treated as a *penalty* and barred in one year by limitation (*Cooper* v. *Rowley*, 29 O. St., 547). Moreover, it has been held that directors who are themselves wrongdoers are disqualified from acting as the representatives of the company in any litigation for the correction of the wrong in which they have participated. *Knoop* v. *Bomrich*, 49 N. J. Eq., 82.

In the absence of any allegations of fraud or deceit, a participant in such a transaction can not appeal to the equitable doctrine of "natural justice" as creating an implied obligation in contravention of an express contract fully executed and of which he has received the benefit. In all the cases upon the subject, including those cited in the briefs, the working out of justice through equitable principles is based on the fact that the director accomplished by indirection and deceit that which was a breach of trust or fraud upon the company he represented, or where sim-

ilar results were attained by conspiring directors in fraud of the rights of stockholders or of third parties dealing with the corporation.

But it is held in many jurisdictions—and the rule is general—that, subject to the condition of strictest good faith and a full and fair disclosure of interest, directors have power to enter into fair and open contracts with their companies. *Cavendish Bentick* v. *Fenn,* 12 App. Cas., 652; *Robinson* v. *McCracken,* 52 Fed., 726; s. c. aff'd by C. C. App. (U. S.), 57 Fed., 375; *Kaye* v. *Craydon Tramways Co.,* 67 L. J. Ch., 222; *Ft. Wayne Rolling Mill* v. *Hill,* 174 Mass., 224.

And subject also to the right of the corporation to avoid a sale by reason of the fiduciary relations, if exercised within a reasonable time after the facts are known or can with reasonable diligence be ascertained (*Twin Lick Oil Co.* v. *Marburg,* 91 U. S., 587). But upon the allegations of the cross-petition here, not only is there a total absence of the slightest intimation of bad faith or concealment, but the nature of the transaction implies full knowledge of both participants, and it is quite conceivable that such a transaction, so far from injuring or defrauding the company may have been of great benefit to it, and from aught that appears may have occasioned loss rather than profit to the purchaser.

In any aspect of the case, it does not appear that a right of recovery exists in favor of the company that could form the basis of a several judgment, nor any ground of set-off; and, therefore, the demurrer must be sustained. The court is not, however, unmindful of the rule that directors, as agents occupying a fiduciary relation to the corporation, should not be permitted to occupy a position in conflict with the interests they represent, and will be prompt to condemn any arrangements by directors to secure to themselves an undue advantage at the expense of the company whenever properly brought before it for consideration. *Wardell* v. *R. R. Co.,* 103 U. S., 651 (Field, J.); *Anderson* v. *Carkins,* 135 U. S., 483.

The demurrer is sustained; and as the pleadings admit the indebtedness to plaintiffs, judgment may be entered for plaintiffs in accordance with the prayer of the petition.

Demurrer to cross-petition sustained and judgment for plaintiffs, with costs.

*H. D. Peck,* for demurrer.
*Edward Colston, Lawrence Maxwell, contra.*