# FRANCIS D. ELLIS,

## *vs.*

# PENN BEEF COMPANY, JOHN W. ASHWORTH, CLINTON B. KRAMER and JONATHAN H. BROWN.

### *New Castle, July* 14, 1911.

While the duty of a court of equity to appoint a receiver *pendente lite* to prevent injury to the thing in controversy is a delicate and responsible duty, it should be used unhesitatingly in a proper case.

A stockholder of a corporation may sue in equity for the cancellation of an unlawful and *ultra vires* issue of stock, even though the stockholder, when he acquired his interest, had knowledge of that fact.

Where it is certain that a corporation will not act, the stockholder need not apply to the corporation before suing to cancel stock unlawfully issued.

*Const. Art.* 9, § 3, provides that no corporation shall issue stock, except for money paid, labor done, or personal property, or real estate or leases thereof. *General Corporation Law*, § 14, provides that subscriptions to or purchases of the capital stock of any corporation may be paid for by cash, by labor done, by personal property, or by real property, or by leases thereof, and that, in the absence of fraud, the judgment of the directors as to the value of such labor, etc., shall be conclusive. Stock in a corporation was issued for property which was never delivered to the corporation, and the issue was ratified by the directors. *Held*, that such issue was unlawful and *ultra vires*, and might be questioned by other stockholders; it being a fraud upon the State, if upon no one else.

In a suit to cancel stock unlawfully issued, where the appointment of a receiver *pendente lite* was sought to preserve the property of the corporation, a court of equity can give that relief, where the corporation is before the Court and the stockholders whose stock is sought to be canceled filed affidavits and had actual notice of the proceedings, though not served with the rule for the appointment of the receiver.

Where only one of three stockholders of a corporation paid value for his shares of stock; and the other two have entirely and permanently failed to deliver to the company the consideration for the shares of stock issued to them; and the majority have deposed the paying stockholder from his office of president and from control of the expenditures of the company; and the business has been conducted at a loss; and deep-seated dissensions have arisen between the three stockholders as directors and officers, whereby the interests of the company and loss and diminution of its

capital threatened; a court of equity, on a bill brought by the paying stockholder to have canceled the shares issued to the other stockholders, as unlawfully issued in violation of a statute requiring real value to be given for shares of stock, may, as auxiliary to final relief, appoint a receiver *pendente lite.*

Where a stockholder in a domestic corporation sued to cancel stock unlawfully issued, and it was shown that there were deep-rooted dissensions between the stockholders of the corporation, that the business was unprofitable, and that complainant was the only stockholder who had invested money in the enterprise, a receiver *pendente lite* should be appointed, though none of the corporation's property was within the State,and though the receiver's powers could not extend beyond the boundaries of the state; for, by *General Corporation Law,* § 130, the capital stock of a domestic corporation is, for all purposes of title, action, attachment, etc., within the state, and, a receiver having been appointed within the state, ancillary receivership might be had in the states where the corporation's property was situated.

While the Chancellor may refuse an appeal in cases where there was no decree, either interlocutory or final, the Chancellor cannot refuse appeals in other cases, and petitions for appeals must be granted as of course.

BILL BY STOCKHOLDER FOR CANCELLATION OF SHARES OF STOCK. The complainant was the holder of a majority of the shares of capital stock issued by the defendant corporation and by his bill sought to have cancelled the share; of stock issued to the defendants, Ashworth, Kramer and Brown, as well as the appointment of a receiver for said defendant corporation *pendente lite,* to conserve its property from dissipation pending final determination of the cause.

Upon presentation of the bill to the Chancellor, a rule was issued requiring the defendant company to show cause why a receiver *pendente lite* should not be appointed, and at the return thereof the cause was heard on bill and *ex parte* affidavits; the material facts appearing in the opinion.

*Robert H. Richards and Christopher L. Ward,* for complainant.

*Saulsbury, Ponder & Morris,* for defendant corporation.

THE CHANCELLOR: The bill and affidavits submitted on the rule to show cause why a receiver of the company should

not be appointed present a case which calls for the intervention of the Court of Chancery. Two persons, Ashworth and Kramer, desiring to engage in the business of selling meat in Philadelphia on commission, having leased a building for the purpose for ten years, obtained a charter in Delaware, using for the purpose a third person, Brown, as a dummy, as an incorporator, and afterwards as a stockholder and director. After organization and the adoption of by-laws, etc., the incorporators, Ashworth, Kramer and Brown, no one else being then interested, entered into an arrangement with Ashworth and Kramer whereby there was purchased for the company from Ashworth and Kramer a refrigerating plant and appliances, certain office furniture and the lease, for the consideration of $20,000 in full-paid common stock of the company, *i. e.*, 200 shares at $100 par value, being all the authorized common stock. This was carried out by the issuance to Ashworth and Kramer of 200 shares of common stock, 100 to Kramer and 100 to Ashworth, and the latter transferred three shares to Brown, presumably to qualify him as a director. After the election of directors this action of the incorporators was ratified by them. Both the incorporators and directors, presumably by resolution, found the property and lease to be of the fair value of $20,000. As a fact neither Ashworth nor Kramer then or thereafter paid any portion of the cost of the refrigerator, which cost about $8,000; and so far as appears by any allegation on their part, have not paid any money as consideration for any stock issued to them, except two months' rent at $200 per month. Whether the lease is of value is disputed, and the weight of the evidence on the *ex parte* affidavits is that it was not. There is no evidence of value of the furniture, and it was not referred to in the argument.

A few days after the incorporation, the company being without money capital, the complainant, Ellis, joined the enterprise by becoming a stockholder, paid in in cash $20,000, and received one hundred shares of common and one hundred shares of the preferred stock, the preferred stock having no vote. By agreement between Ellis, Ashworth and Kramer, Ellis was given control of the company by the transfer to him

of fifty-one more shares of the common stock, twenty-five from Kramer and twenty-six from Ashworth, the total authorized and outstanding common stock being three hundred shares. Ellis knew when he became thus interested that the plant had not been furnished, but that it was the duty of Ashworth and Kramer to furnish it at their own expense, as the real consideration for their shares of stock. This they absolutely failed to do. Later Ellis paid in $4,800 more money and received forty-eight shares of preferred stock. Later, because of the failure of Ashworth and Kramer to pay for the plant, it was paid for from money of the company.

The business was unprofitable from the start, and dissensions arose between Ellis on the one side, and Ashworth and Kramer on the other; resulting in changes in the by-laws, the deposition of Ellis as president, after he had discharged Ashworth and Kramer from their supposed positions as salesmen; and other things occurred which show clearly that the dissensions are not only deep-seated, but also such as to entirely jeopardize the success of the enterprise. It is unimportant to consider these in detail at this time. There are also allegations of fraudulent misrepresentations to Ellis by Ashworth and Kramer, as promoters of the company, as to arrangements alleged to have theretofore been made for obtaining shipments of meat and provisions to the company to be sold on commission; but the conclusions now reached are not based on this branch of the case.

The complainant, being the only stockholder who has invested money in the business, now asserts that the other stockholders hold their stock without having paid, or rendered, the consideration fixed therefor; and asks that the shares be canceled, offering to surrender for cancellation the fifty-one shares of common stock which he received from Ashworth and Kramer; and in view of the probable jeopardy of his interest by reason of the dissension, asks that a receiver *pendente lite* be appointed to take charge of the affairs of the company until the rights of the stockholders to their stock be ascertained. Not only is the company a defendant, but also Ashworth, Kramer and Brown, being all the stockholders. An appearance is now

made for the company only, and the rule was not served on Ashworth and Kramer. Brown takes no part in the controversy.

The appointment of a receiver *pendente lite* is a well recognized branch of the general preventive jurisdiction to protect from injury the thing in controversy, and preserve it for all parties in interest until disposed of as the court may direct. This is an exceedingly delicate and responsible duty, to be discharged with the utmost caution and only under such special and peculiar circumstances as demand summary relief. It is, therefore, not to be exercised doubtingly, but the Court must be convinced that the relief is needed, and that it is the appropriate means of securing a proper end. Serious injury to the complainant is an important element in deciding whether the relief should be granted. It is, however, a very beneficent remedy in a proper case, and should be used boldly. The remedy is, of course, provisional and not decisive of the ultimate rights nor conclusive of the merits. With a *prima facie* case made by the complainant, and probable cause for sustaining the bill, the preliminary relief should be granted, without going into the merits. In some cases the defendant is allowed to give bond for the security of the *res* to avoid a receivership.

The Constitution of Delaware requires that there shall be real value given in payment of shares of stock, and the general corporation law contains the same requirement. *Article* 9, § 3, of the Constitution is, as follows:

"No corporation shall issue stock, except for money paid, labor done or personal property, real estate or leases thereof actually acquired by such corporation."

*Section* 14 of the general corporation law is, as follows:

"Subscriptions to, or purchase of, the capital stock of any corporation organized or to be organized under any law of this State may be paid for, wholly or partly, by cash, by labor done, by personal property, or by real property or leases thereof; and the stock so issued shall be declared and taken to be full paid stock and not liable to any further call, nor shall the holder thereof be liable for any further payments under the provisions of this Act. And in the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases, shall be conclusive."

The situs of the shares of the company are in Delaware for

the purposes of this case and the determination of the question raised therein, under *section* 130 of the general corporation law, which provides, as follows:

"For all purposes of title, action, attachment, garnishment, and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State whether organized under this Act or otherwise, shall be regarded as in this State."

There are two main questions raised by the bill: (1) Whether a stockholder, who was not an incorporator, and who has paid in full for his shares, acquired since the organization, may maintain a bill to cancel shares held by the other stockholders, who have paid practically nothing for their shares, and who have admittedly failed entirely to give to the company the real consideration for which shares were issued to them, notwithstanding they as directors of the company have in fact declared that the consideration to be given by themselves was of fair value for their stock. (2) Whether the Court, in view of deep-seated dissensions between the officers and stockholders of the company, jeopardizing the interests of all, will appoint a receiver to take charge of the business of the company pending the suit for cancellation of the stock, in order to conserve the property and other interests, the alleged illegal stockholders being in control of the company, and none of the property of the company and none of the officers being in Delaware.

(1) A stockholder may maintain a bill for the cancellation of stock of the corporation where the issue was *ultra vires* and unlawful. 4 *Thompson on Corporations* (2d *Ed.*) § 3521, *p.* 161; 1 *Cook on Corporations* (6th *Ed.*) § 651; *Kimball v. Grate Co.*, 69 *N. H.* 485, 45 *Atl.* 253; *Stebbins v. Perry County*, 167 *Ill.* 567, 47 *N. E.* 1048; *Easton Bank v. Tile Co.*, 69 *N. J. Eq.* 326, 60 *Atl.* 54; *s. c. affirmed*, 70 *N. J. Eq.* 722, 64 *Atl.* 1095; and other cases cited. It is shown, however, that the complainant at the time he acquired his stock had notice of the facts on which was based the claim that the issue of stock was unlawful. But this does not, at this time, seem to be conclusive against his here asserted right as stockholder. 3 *Cook on Corporations*, § 729. Nor is it necessary, under the facts in this case, for the stock-

holder to have applied to the corporation to institute the suit to cancel the stock, as it appears clearly that such application would be futile.

The solicitor for the defendant company takes the position that the Court cannot review the action of the directors of the company in their determination of the value of the consideration for the stock issued to Ashworth and Kramer, and cites the case of *Old Dominion, etc., Co. v. Lewisohn et al.*, reported first in 136 *Fed.* 915, and later heard by the United States Circuit Court of Appeals and reported in 148 *Fed.* 1020, and finally reviewed by the United States Supreme Court in 210 U. S. 206. But it will be noted, that that case is materially different from the case under consideration. There the consideration for an issue of stock was property actually transferred by the stockholder to the company, and the alleged actual fraud consisted in a gross overvaluation of it by the vendees as directors in dealing with themselves as vendors; while here there was practically an entire failure of consideration for the stock. Furthermore, the Supreme Judicial Court of Massachusetts decided differently another case brought there on the same facts, and concerning the same transaction, against another of the stockholders interested similarly with the one who was the defendant in the case in the United States courts. Inasmuch as the two courts have equal standing here as furnishing precedents, and neither are binding on this Court, except as the weight of the reasoning thereof appeals to this Court, the question is not authoritatively settled. It certainly cannot be predicted that the United States courts would have viewed the facts in this case in the same light as they viewed those in the case referred to. Indeed, it would be shocking to common sense and correct business principles, if stock can be issued as full paid for something which does not then exist, and which the stockholder never gives to the company as the agreed consideration for his stock. It would be equally shocking to hold that other stockholders could not raise the question of illegality. The Constitution and statutes of the State mean something. If all the then stockholders join in an action by the company by its officers and directors, in issuing part of the capital stock for something which does

not exist, and which they never furnish to the company, it is an "actual fraud," though no one be then deceived or injured. There is fraud towards the State, which in effect has prohibited such transactions. No pretended exercise of judgment can say that something which has no existence has value. There is possibly an actual fraud against the stockholders who subsequently acquired shares then unissued. It is *ultra vires*, because unlawful and prohibited. Even the temporary acquiescence of such subsequent stockholders in the original issue should not prevent them from asserting later a practically complete failure of consideration, and a practically complete and permanent failure by the original stockholders to do for the corporation that which they agreed to do as consideration for their stock. No such decision has been cited.

But it is said that the company here received some part of the consideration, viz., the lease, which is of some value; and if the stock be canceled it should be returned to the defendants, Ashworth and Kramer, the lessees, which cannot be done. This is not a bar to the remedy here sought. If on the final hearing of the case the complainant is found to be entitled to relief of cancellation, the value of the lease can be ascertained, and the defendants, Ashworth and Kramer, be allowed to retain a part of their stock proportionate to the value of the lease, or some other equitable adjustment made of these and some other minor rights and interests. Again it is said that no preliminary order can be made, because neither Ashworth nor Kramer have been either served with the rule, or appeared at the hearing of it. But this will not deter the Court from protecting the rights of the complainant; especially in view of the fact that both Ashworth and Kramer have actual notice of the proceeding, and have both filed in the cause at the hearing of the rule full and comprehensive *ex parte* affidavits against the rule. No determination of their rights to stock is now made, or could be made at this stage of the case; and hence their legal absence is not an obstacle to furnishing the temporary relief sought at this time. It may be quite true that some parts of the agreements between Ellis on one part, and Ashworth and Kramer on the other, were not enforceable

against the company, or other stockholders—such as the agreement that Ellis should be president and control the expenditures. But the main question does not concern these agreements.

(2) Should the Court, as auxiliary to the main relief sought, viz., cancellation of the stock issued to Ashworth, Kramer and Brown, appoint a receiver of the corporation pending the suit? The basis of the application is (1) the deep-seated dissensions between the stockholders, officers and directors, which are or are likely to be injurious to the continuance of the business of the company; and (2) the disproportion of the material interests of the complainant, Ellis, on one side, and of Ashworth and Kramer on the other. Both reasons exist why the Court should take possession of the property of the company, and conserve it pending the quarrel between its stockholders and officers for the control and management of it; particularly where the control of the company is held by stockholders against whom, on the undisputed facts, there is made a *prima facie* case of illegality in the issuance and holding of their stock. The affidavits disclose the dissensions and the serious character thereof. It is true also that the complainant alone has actually invested money in the company. The loss, if any, resulting from a temporary receivership, will fall on him alone; and this is important, though not controlling in its effect in molding the discretion of the Court. It is undisputed that the company has been losing money since it was started; that it has bought and sold meat and sold some on commission; and that the capital of the company is being consumed in its unprofitable operation; and further that the person who alone has invested money in the business has been recently put out of control of the company by the two other and non-contributing and *prima facie* illegal stockholders, and is thus unable to protect his interests. With or without precedent, and in the absence of strong precedents to the contrary, it is deemed to be the duty of this Court, at this time, to afford the complainant all the relief that is fairly needed and within the power of this Court, including the taking possession of the affairs and property of the company, even

though it involves, as it probably does, the cessation of its business.

It has been held that a receiver will not be appointed to wind up the affairs of a corporation merely because of dissensions among stockholders, where it appears that the corporation is solvent and its business prosperous. *Sternberg v. Wolff* 56 *N. J. Eq.* 555, 42 *Atl.* 1078. Nor because of insolvency alone, except by statute. But where the legality of the issuance of the stock held by the officers in control is directly attacked in the proceeding before the Court; and the business is not and has not been prosperous; and the only real stockholder has been deposed from his control; the further continuance of the business by the defendants whose stock is attacked, would seem to be clearly so unwise and unfair as that the Court should take possession of the property of the company, and conserve it pending a decision as to the validity of the stock of the defendants.

In *Gray, Atty. Gen. v. Council of Newark et al., ante p.* 171, 79 *Atl.* 739, a case where citizens of the town as relators sought cancellation of a lease of the water and light plant, Chief Justice Pennewill, acting in substitution for the Chancellor, considered an application for a receiver *pendente lite;* and refused to appoint one in the absence of evidence of facts to show reasonable apprehension of danger and irreparable loss. There was there no evidence of the insolvency of the lessee, or of injury likely to occur from a continuance of operation by the lessee pending the suit. A preliminary injunction was issued restraining a disposition, alteration or injury of the plant by the lessee, and required it to give a substantial bond to secure the protection of the plant. The power of the Court of Chancery in a proper case, even on its own motion and without a prayer to that effect in the bill, was asserted in the case cited. In the case under consideration there is some evidence of reasonable danger of loss of capital of the company, and the officers in control are stockholders against whom there is proof, at least *prima facie*, that their shares were illegally issued and held, and are themselves financially irresponsible. Threatened diminution of capital by losses in the operation of the business, unlawfully con-

trolled by officers financially irresponsible, would seem to justify a reasonable apprehension of irreparable loss, such as distinguishes the case cited from the one under consideration; and to justify the appointment of a receiver *pendente lite* to conserve the corpus for the benefit of those found eventually to be lawful stockholders. The conclusions thus reached are based on what seem clearly to be undisputed facts, and the duty of the Court to interfere in the manner asked seems, therefore, to be clear, for the action is not taken doubtingly.

Can the Court, pending a suit here for the cancellation of stock of a Delaware corporation, and as auxiliary relief therein, appoint a receiver of the corporation to conserve the property of the company, where it does not appear that there is any property of the corporation in Delaware; and where it rather appears that it is carrying on business in another state, and has property there, and all its officers reside out of the State of Delaware? The situs of the stock is here for the adjudication of the legality of the issuance thereof; and the domicil of the corporation is here, as a corporation created under the laws of Delaware; but its property is not here, and this Court cannot, by its own order, obtain the necessary control of such property and business. If the complainant must come to the jurisdiction of this Court for his primary relief, then this Court is bound to do all it can to afford the auxiliary relief, which he is clearly entitled to have from some court. The most this Court can do is to appoint such receiver, though his powers may not extend beyond the territorial limits of the State. But such action will make it easier, at least, for the complainant to have further relief by resorting to the courts of the State where the property of the corporation is actually situated.

The conclusions may be summarized thus: Where only one of the three stockholders of a corporation paid value for his shares of stock; and the other two have entirely and permanently failed to deliver to the company the consideration for the shares of stock issued to them; and the majority have deposed the paying stockholder from his office of president and from control of the expenditures of the company; and the business has been conducted at a loss, and deep-seated dissensions

have arisen between the three stockholders as directors and officers, whereby the interests of the company and loss and diminution of its capital is threatened; a Court of Equity, on a bill brought by the paying stockholder to have canceled the shares issued to the other stockholders, as unlawfully issued in violation of a statute requiring real value to be given for shares of stock, may, as auxiliary to final relief, appoint a receiver *pendente lite*.

By the general corporation Act the situs of the stock is in the domicile of the corporation; and the Court of the domicil having, therefore, jurisdiction to cancel the unlawfully issued shares, may also afford the auxiliary preventive relief of a receivership *pendente lite*, though none of the property of the company be within the jurisdiction. The court of the State where the property is situated can be relied on to afford the complainant further assistance by the appointment of a receiver ancillary to the receivership of this Court.

An order will be made appointing a receiver *pendente lite*, with such instruct'ons and powers as are appropriate considering the character of the business and property of the corporation, and the object to be accomplished.

In accordance with the foregoing opinion the following order was entered:

"And now, to wit, this 11th day of July, A. D. 1911, the rule heretofore issued in the above cause having come on to be heard, upon bill and affidavits on behalf of the complainant and of the said corporation, one of the defendants, and the respondent to the rule, and the same having been maturely considered,

"It is ordered by the Chancellor that Arthur W. Spruance, Esq., of the City of Wilmington, and Arthur Plummer, of the City of Philadelphia, be and they are hereby appointed receivers of said Penn Beef Company during the pendency of said cause, or until otherwise ordered by the Court, and that the said receivers, before assuming to act hereunder, shall, within five days from the date hereof, give bond in the sum of one thousand dollars, with surety to be approved by the Chancellor,

otherwise the appointment shall be void; and further that the said receivers be and they are hereby authorized and directed to take possession and charge of all the property and assets of said corporation, wherever situated, to collect all moneys due and owing to said corporation, to discontinue the purchase of meat and provisions by said corporation, to forthwith sell and dispose of all meat and provisions and other perishable property of the said corporation, to safeguard the property of said corporation by the maintenance of insurance and watchmen, if necessary, to make, within ten days, an inventory and appraisement of all the property and assets of the said corporation and return the same to this Court, and to make and file in the office of the Register in Chancery monthly reports of their proceedings hereunder.

"And the said receivers are hereby authorized and empowered to make application, or to take such legal proceedings as may be necessary, in the courts of the State of Pennsylvania to secure the aid of said courts, by the appointment of ancillary receivers or otherwise, in the taking possession and charge of the property and assets of said corporation situated in said State of Pennsylvania.

'And, further, that the Chancellor reserves the power to discharge said receivers and to make other orders in the premises.

"And it appearing that this complainant is a non-resident of the State of Delaware and that the said corporation has no property or assets in the State of Delaware, it is further ordered that the complainant within five days give bond in the sum of one thousand dollars to the State of Delaware, with surety to be approved by the Chancellor, conditioned to pay the costs of this cause and of the said receivership in case the assets and property of the company available for this purpose be insufficient for the purpose."

MOTION FOR THE ALLOWANCE OF AN APPEAL. From the foregoing order the Penn Beef Company, one of the defendants, the only respondent in the rule, by its solicitors, prayed an appeal, as follows:

"And now, to wit, this 11th day of July, A. D. 1911, the said Penn Beef Company, the defendant against whom the rule for the appointment of a receiver *pendente lite* was issued, comes into Court and prays the Chancellor that an appeal may be granted from the interlocutory decree of the Chancellor, made on the 11th day of July, A. D. 1911, appointing a receiver *pendente lite* to take charge of and administer the assets, effects, business and affairs of it, the said Penn Beef Company, during the pendency of this suit and until a final decree shall have been entered in the same."

*Saulsbury, Ponder & Morris,* for the defendant, Penn Beef Company.

*Paragraph* 4 *of Section* 12, *Article* 4, of the Constitution of 1897, provides that the Supreme Court shall have jurisdiction "to receive appeals from the Court of Chancery and to determine finally all matters of appeal in the interlocutory or final decrees and proceedings in Chancery." The contentions of the complainant are (1) that the decree of the Chancellor, entered on the 11th day of July, A. D. 1911, is an interlocutory decree; and (2) that the Supreme Court is the proper Court to decide whether an appeal will lie. The decree appointing receivers *pendente lite* is more than a simple order for the preservation of the property of the Penn Beef Company in *statu quo,* because it provides that the receivers shall, *inter alia,* "discontinue the purchase of meat and provisions by said corporation"; thus effectually changing the condition of the corporation from one doing an active business to one with no business. It adjudicates the right of said company to exercise the powers conferred upon it under *sections* 2 and 3 of the general corporation law; and such an order is an interlocutory decree. *Brachendorf v. Kehm,* 72 *Ill. App.* 228; *St. Louis, etc. Co. v. Vandalia,* 103 *Ill. App.* 363; *Hutton v. Lockridge,* 27 *W. Va.* 428; *Ellicott v. U. S. Ins. Co.,* 7 *Gill.* 307; *Lewis v. Campau,* 14 *Mich.* 458; *Hall v. Wayne, Circuit Judge,* 111 *Mich.* 395; *Maxfield v. Freeman,* 39 *Mich.* 64: *Callanan, et al v. Shaw,* 19 *Ia.* 184.

It will be seen from the above cases that there is no clearly defined line between an order and a decree. The mere appoint-

ment of a receiver to take possession of certain property may be merely an order, but the Courts do not hesitate to call such an order, when it divests rights, a decree, and they even go so far as to call such an exercise of power a final decree regardless of the stage of the case at which it is made. The Supreme Court is the Court to decide whether an appeal will lie, or not, in any given case. *Oliver v. Palmer and Hamilton*, 11 *Gill. & J.* 137.

*Robert H. Richards and Christopher L. Ward*, for the complainant.

The Constitution of this State originally gave to the High Court of Errors and Appeals jurisdiction "to receive and determine appeals from interlocutory or final orders or decrees of the Chancellor". The change in the language conferring jurisdiction upon the Supreme Court in appeals from the Court of Chancery, by the omission of the word "orders", was made by the Constitution of 1831. This change is a significant one. We are bound to assume that the framers thereof recognized the technical meaning in law of the words which they used and that when they omitted the word "orders" they did so purposely and with the design to limit the jurisdiction of the Supreme Court in appeals from the Court of Chancery. The order made by the Chancellor in the case at bar appointing the receivers *pendente lite* is technically termed a "decretal order", and is in no sense a decree or a judgment. *Bissell Carpet Sweeper Co. v. Goshen Sweeper Co.*, 72 *Fed.* 545.

Under the English equity practice, an appeal would lie only from a final decree or from an interlocutory order or decree made for some purpose necessary to a final decree. 3 *Black. Com.*, 454; 1 *Harrison's Chan. Prac.*, 454. It is respectfully submitted that the order made by the Chancellor in the case at bar was not made for any purpose necessary to a final decree. The main relief sought is the cancellation of stock. The appointment of receivers *pendente lite* has nothing whatever to do with the cancellation of the stock. It is purely auxiliary to the cause and was an order made by the Chancellor in the exercise of sound discretion, upon consideration of all the facts and circumstances disclosed in the case and which

tended to show that the great interests of the complainant required such auxiliary relief for the preservation thereof; and that the inconveniences resulting from such auxiliary relief were not evenly balanced, but very greatly preponderated on the side of the complainant. In the United States, either upon the ground that the appointment of a receiver neither settles nor prejudices rights but is resorted to merly for the purpose of preserving the property in controversy pending litigation, or on the ground that the appointment of a receiver is merely an interlocutory order and purely discretionary, it has been generally held that such an order is not appealable. 17 *Enc. Pl. and Pr.*, 853; *Hull v. Caughy*, 66 *Md* 104; *Sheldon v. Weeks*, 2 *Barb.* 532; *Connolly v. Kretz*, 78 *N. Y.* 620; *Dawson v. Parsons*, 137 *N. Y.* 605; *Fuller v. Adams*, 12 *Ind.* 559; *Milwaukee & Minnesota R. R. Co. v. Soutter*, 154 *U. S.* 540, 17 *Law Ed.* 604.

THE CHANCELLOR: The Penn Beef Company, one of the defendants, and the respondent in the rule for the appointment of a receiver *pendente lite*, by its solicitor, having moved the Chancellor for an appeal from his order or decree made at the hearing of the rule, the motion was fully argued by counsel for the complainants and the defendant corporation, and authorities submitted. The solicitor for the corporation, among other things, urged as a ground of appeal that the order or decree was something more than a simple order for the preservation of the property of the company in *statu quo*, because of that portion of the order which directs the receivers to discontinue the purchase of meat and provisions, the business in which the corporation was engaged. It should be noted, however, that this and all other powers given to the receivers are subject to be changed by the Chancellor upon a proper showing, and this one was made only because the Chancellor did not think it wise to impose on the receivers the duty of carrying on such kind of business which had theretofore been unsuccessfully conducted, and a cessation of that branch of the business seemed the wisest way to actually conserve the capital of the company by not further so risking it. The reason for this part of the order was quite obviously important.

But it is pointed out that this Court has no right to decide whether the appeal will lie, and that the appellate court alone can so decide.    In Delaware the Supreme Court is given jurisdiction to receive appeals from the Court of Chancery.    There is no controlling provision of statute or constitution, or rule of the Court of Chancery or Supreme Court, which makes it necessary that appeals be allowed by the Chancellor.    A statute lim'ts the times within which appeals may be taken (*Revised Code*, *c*. 124, *p*. 890), and *Rule* 58 of the Court of Chancery simply provides that "an appeal may be prayed and entered at any time in open court, within the period limited by statute for the filing of the appeal," etc.    Among the forms framed by Chancellor Bates in 1869 for use in the Court of Chancery is the following  respecting appeals:

"The complainant, by his solicitor, prays an appeal, which is granted," etc.

The long established practice, then, is that a prayer for an appeal is made to the Chancellor and by him granted.    It does not follow, however, that he has power to refuse a prayer for an appeal from a decree, interlocutory or final. In a plain case the Chancellor can refuse an appeal to that which is clearly not a decree interlocutory or final, *e. g.*, a prayer for an appeal by one of two or more defendants whose demurrer to the bill has been overruled may be refused, the other defendant or defendants having answered the bill, for this is clearly not a decree, but an administrative order respecting pleadings, not followed by any result upon the litigation, except to bring the cause forward to an issue.    This was done by the present Chancellor in the case of *Newlin, et al., v. Phillips, Executrix, et al., ante page* 165. A different question is raised, however, respecting the present action of the Court in this cause, whereby it is found necessary to make the order, as auxiliary relief, and not as part of the real object of the suit.

The helpful Maryland case of *Thompson v. McKim, et al.*, 6 *Harr. & J.* 302, has been carefully considered.    The bill was in character an application for equitable execution and alleged that the defendant had received money for the use of the complainants, from the debtor of the complainants under a contract

between the debtor and the defendant. An order was made directing the defendant to bring the money into Court. From this order an appeal was prayed for and was refused, on the ground that it was not a decretal order and, therefore, not appealable. At the next term of the Court of Appeals in Maryland the appellant filed a petition setting forth the foregoing facts and a duly authenticated transcript of the proceedings in the Court of Chancery, and asked that Court to hear the cause. The Appellate Court decided that the adjudication was a decretal order subject to be appealed, because it decided and settled the right between the parties, and also used the following language:

"And whether an appeal will lie in any given case, is perhaps a question proper to be decided by this Court only, being a question relating to its jurisdiction touching the rights of the citizen, which can be controlled by no other court."

Upon the right of the Chancellor to grant an appeal, the Court said that the writ was mandatory, and that there was no discretion in the subordinate tribunal to refuse the cause being carried through to the appellate tribunal, and this was not based on any particular statute of Maryland different in any respect from the Constitution, statutes and rules of the Supreme Court and Court of Chancery of this State. The Supreme Court held, as follows:

"In England it has been thought right in principle that appeals should lie from Chancery to a tribunal of ulterior jurisdiction, the House of Peers, without consulting the will of the Chancellor on the subject. In this State the same principle is recognized, and this Court, the Court of Appeals, is constituted the appellate tribunal; the difference resting only in the constitution of the respective appellate courts, and in the particular manner of carrying up or prosecuting appeals; the mode there being by petition, to the court of last resort, and here, by demanding an appeal according to the directions of the Acts of Assembly; but neither there nor here, is it necessary that the appeal should be allowed by the Chancellor, nor is any power vested in him to withhold it; it lies *ex debito justitiae*, and is not granted by the Chancellor *ex gratia*. Indeed, if not distinctly admitted, it was scarcely denied by the counsel who closed the argument on the part of the complainants in the bill that the appeal is properly before us."

Opinion.

The result of the action of the Supreme Court was the ordering of a stay of the proceedings in the Court of Chancery until the appeal could be heard, upon the appellee giving certain bond. In a later case in Maryland, *Oliver v. Plamer*, 11 *Gill & J.* 143, the Appellate Court decided expressly that the question, whether an adjudication was appealable, was with that Court and not the Court of original jurisdiction. As a result, an order granting the appeal will be made in the case before the Court. If appeals from the Court of Chancery in England to the House of Lords are had without consulting the Chancellor, and there is no constitutional or statutory right to exercise any discretion to grant or refuse an appeal, or even decide whether the particular adjudication be a decree, interlocutory in character, then, perhaps, the Chancellor should grant appeals upon request. The Appellate Court may so hold, but in this particular case, however, it is not decided that the Chancellor has no power to determine whether his particular action be or be not a decree. But in view of the insistence of counsel that it is appealable, the defendant corporation will not be denied a right to review the findings of the Chancellor, who is (as probably other judicial officers are) solicitous to afford speedy and easy opportunities to correct any of his errors. Under the Constitution the appeal will not be a supersedeas without a bond with security, and the rights of the stockholders may thereby be protected pending the appeal, which will not in any measure delay the progress of the case towards a determination of its main feature, the cancellation of the unlawfully issued stock.

NOTE.—The appeal in this cause was not perfected, and the receivers appointed by the Chancellor were appointed ancillary receivers in Pennsylvania and wound up the affairs of the defendant company.