CHARLES Y. SCULLY, JOHN E. O'BRIEN, HARRY J. HOGG and HARRY T. ROSENHEIM,

*vs.*

AUTOMOBILE FINANCE COMPANY and CENTRAL SECURITY COMPANY.

*New Castle, Sept.* 22, 1917.

An issue of common stock, which alone had voting power, by a corporation to an associated corporation composed of the organizers of the first company, in consideration of a transfer of a valueless business idea, not salable or transferable, violated the Constitution and statutes, such transaction being an actual fraud, and no pretended exercise of business judgment by directors could validate it.

Preferred stockholders, acting for themselves and other stockholders, and not for creditors, may bring suit to cancel shares of common stock illegally issued in consideration of a valueless business idea, although in the case of a proceeding against delinquent stockholders by or for creditors in case of insolvency, an action at law is appropriate.

Constitutional and statutory prohibitions respecting issue of stock, except for property, do not prohibit the issue of stock as partly paid for. Such provisions mean that stock cannot be issued as fully paid, so as to

relieve the holder from liability, unless the shares have been paid for in money or other property.

Preferred stockholders could not be denied relief in suit to cancel common stock issued for a valueless consideration, because they acquired their stock subsequent to the unlawful issue; they being then ignorant of its unlawful character, and there being nothing to show their consent, nor conduct cutting them off from such remedy.

Preferred stockholders have a right to question the legality of the issue of common stock, particularly where the control of the company is in the holders of common stock, who alone possess voting powers.

Injunction Bill. The complainants, being the owners of shares of the preferred stock of the Automobile Finance Company, and claiming to be entitled to other shares of the preferred stock and portions of the common stock of said company, seek to restrain the Central Security Company from voting or in any manner disposing of the entire authorized issue of common stock of the Automobile Finance Company, which is alleged to have been illegally issued to the Central Security Company, and seek also a cancellation of the shares of common stock issued to Central Security Company and an accounting therefor.

Demurrers were filed on behalf of both defendants, and the cause was heard on bill and demurrers, the facts being set forth in the opinion.

*Herbert H. Ward,* for the complainants.

*Martin E. Smith,* and with him *George J. Edwards,* of the Philadelphia Bar, for the defendants.

The Chancellor. A demurrer has been filed by each of the two defendants to the bill. By the bill it appears that a group of men organized two corporations under the laws of Delaware, corporation A, with an authorized capital of $400,-000, one-half preferred stock, with no right to vote and one-half common stock with voting power; and corporation B, with $5,000 capital. Corporation A was organized chiefly to loan money to persons desiring to purchase automobiles, title to the cars to be taken as security for advances. The purpose

was that B should be and was a holding company and A the active company. By an arrangement between the two companies A sold and transferred to B all its $200,000 of common stock for a theory of carrying on the business of A, which idea has been used by other corporations and which had no commercial value, or indeed any appreciable value. Afterwards a contract was made by A with two of the group whereby the group undertook the sale of the preferred stock of A and were to give one share of common stock as bonus for each two shares of preferred stock sold.

The complainants each purchased shares of preferred stock of A and became owners of common stock, and are directors of company A and are not owners of stock of B. At the time of acquiring the stock they were ignorant of the transactions between the two corporations. After finding out the facts in general, the complainants, believing that the arrangement was fraudulent and illegal, appealed to the officers and directors of A to take steps to undo the wrong, and obtaining no help filed a bill against both corporations, asking, among other things, that the transfer of the shares of common stock of A to B be adjudged illegal and that they be returned to the company for cancellation.

In brief, company A sold and transferred to company B all of its common stock, which alone had voting power, for something which obviously had no value, and which was not salable or transferable, viz: a business idea which others had used and which any one could use freely, and stockholders of A who acquired their shares subsequent to the transfer, being unsuccessful in moving the officers of the company to act, have taken steps to have the transfer annulled because illegal under the laws of Delaware, and done for a fraudulent purpose.

For the defendants it is urged that there was no fraud, and that the stock was lawfully held; that at most the holders of the stock were liable to pay therefor under the provisions of the General Incorporation Act, and so there was an adequate remedy at law; also that the complainants and company A were estopped to deny the legality of the organization of the company, or to seek a return of the stock; also that the

complainants had no standing because they had acquired stock subsequent to the transaction, and in fact acquired some of it from company B.

Beyond question there was no consideration for the shares issued to the Finance Company. The business idea was not salable or transferable, and had no commercial value, and was not property in any sense. No pretended exercise of business judgment by the directors of the selling company could give any value to that which in fact was not property or rights in and to property, or validate a transaction based on there being value in that which was the subject of the dealings. The transaction violated the Constitution and statutes of the State. In some of the other states the statutes declare void shares of stock issued under such circumstances. Such a transaction is actual fraud and the effect is the same. *Ellis v. Penn Beef Co.,* 9 *Del. Ch.* 213, 80 *Atl.* 666; *Tooker v. National, etc., Co.,* 80 *N. J. Eq.* 305, 84 *Atl.* 10 (1912).

The defendants say that the only remedy is to enforce payment for the shares as authorized by the statute, and that the court cannot annul this issuance thereof or compel a return thereof. If a proceeding against delinquent stockholders is for or by creditors of the company in case of insolvency an action at law is appropriate. But when it is not for creditors, but by stockholders acting for themselves and other stockholders to enforce a right of the corporation which the officers of the company will not enforce, then it may turn out that cancellation of the illegally issued shares is the appropriate remedy.

The case of *Yetter v. Delaware, etc., Co.,* 206 *Pa. St.* 485, 56 *Atl.* 57, cited by the defendants to show that stockholders of a corporation cannot maintain a bill such as this one, does not so hold; but on the contrary the court expressly declined to pass on that question. The right was denied because the Pennsylvania statute gave to the Attorney General the remedy to enforce a provision of the Pennsylvania Constitution and statute substantially like the Constitution and statute of Delaware. There is nothing in the Constitution or statutes of Delaware, or in the decisions of the courts of Delaware, or elsewhere, which speaking generally excludes stockholders from

obtaining proper relief for the corporation, themselves and other stockholders where the prohibition of the Constitution and statutes have been violated by the issue of shares of stock for no value. On the contrary that right of the stockholders was found in *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666. On a re-examination of the general question I am convinced that the principle there stated is sound. *Brahm v. M. C. Gehl Co., et al.*, 132 *Wis.* 674, 112 *N. W.* 1097; *Cuba, etc., Co., v. Kirby*, 149 *Mich.* 453, 112 *N. W.* 1133..

It is further urged by the defendants that inasmuch as the prohibitions of the Constitution and statute respecting the issue of stock except for property are in the past tense, no stock can be issued until fully paid for, and that the provisions of the statute respecting the liability of holders of shares not paid for (*sections* 20, 21 *and* 22) are in conflict therewith. These sections simply provide that shareholders are liable to the full extent of the par value of the shares, and that either the corporation or its creditors can enforce the liability. All that the Constitution means is that stock cannot be issued as fully paid so as to relieve the holder thereof from such liability unless it has been paid for in money or other form of property. There is no prohibition against the issue of stock as partly paid for. The Constitution is violated if shares wholly or in part unpaid for are issued as fully paid for.

In administering the affairs of the Arlington Hotel Company, an insolvent corporation, this court found that the Constitution had been violated and for the benefit of creditors of that company ordered the receivers of the corporation to enforce that liability. In *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666, this same court had recognized that same liability at the instance of a stockholder, though the only relief there granted on the preliminary application was the appointment of a receiver of the company in order to conserve the property and business pending the litigation. There is no conflict between the two decisions of this court. In each the prohibition of the Constitution was enforced to suit the facts of each case, in one favoring the granting to stockholders appropriate relief as to stock issued without any value given therefor, and in

the other requiring holders of stock who had not paid therefor to do so for the benefit of creditors of the company, which was then insolvent.

In the case of *Tooker v. National Sugar Refining Co.*, 80 *N. J. Eq.* 305, 84 *Atl.* 10, a decision by Vice-Chancellor Stevens in 1912, and which does not appear to have been reversed, the court found that there had been a conscious over valuation by the directors of property taken in payment for shares of stock, which was actual fraud and rendered the stock void because the statute as to what can be taken as payment for shares was thereby violated. Where creditors were concerned the shares were still liable to assessment. Being bound by decisions of the Court of Appeals of New Jersey, the Vice-Chancellor felt he could not cancel the stock because the statutes of New Jersey provided a method for retiring stock, and not being sure of the propriety or justice of the other relief asked for and discussed in the opinion, the court said that it would in the decree give the holders of the unlawfully issued stock a right to vote to retire the stock in accordance with the statute. *Howard v. National Telephone Co., et al.,* (*C. C.*) 182 *Fed.* 215.

In the case at bar it is proper to apply the principle approved of in *Ellis v. Penn Beef Co.*, for the bill is properly brought by and for stockholders to effect a cancellation of shares issued for a business idea which was not property, and was not brought by or for creditors of the company to enforce payment for the shares in order to protect creditors, there being no allegation in the bill respecting them. If it should later appear that they need protection or relief the decree can so provide. Indeed, terms to protect and enforce all rights may be imposed in granting relief to the complainants and other stockholders, if they are finally found entitled to relief. Even if the validity of the organization of the company is affected by holding the issue of shares of common stock invalid, some way will be found to meet that situation. The exact form of the relief to be granted is not here material on the question of jurisdiction and power raised by the demurrer.

Are the complainants to be denied relief because they acquired their stock subsequent to the unlawful issue of stock,

being then ignorant of the unlawful character thereof? In *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666, this court held otherwise under the peculiar facts of that case. The court in *Pollitz v. Gould*, 202 *N. Y.* 11, 94 *N. E.* 1088, 38 *L. R. A.* (*N. S.*) 988, *Ann. Cas.* 1912D, 1098, after stating the contrariety of decisions in other states, and considering the question as a new one in New York, sustained that right to a stockholder in the absence of special circumstances, which would render it inequitable for him to be given relief, such as the consent of the prior holder of the stock or something connected with the acquisition of stock by the complaining stockholder. The court reasoned that the right to avoid an unlawful issue was in the company, and when the officers of the company refused to take action the right was in the stockholders acting for the company, and this right of action passed with the transfer of stock.

There is nothing to show that the complainants in the case at bar have as holders of shares of preferred stock consented to the transaction, or because of any conduct personal to them cut themselves off from the remedy of stockholders in general.

Inasmuch as there does not now appear to be ground for denying to these particular complainants the right of objection which in general such stockholders have, they should not at this time be denied a right to maintain their bill. Furthermore, the complainants as holders of preferred stock have a right to question the legality of the issue of common stock. *Howard v. National Telephone Co., supra.* Particularly is this true in this case where the control of the company is in the holders of common stock, to which alone voting powers are given.

It is not profitable at this time to consider the effect of sustaining the bill on the legality of the organization of the company and its corporate existence, which was discussed in one of the briefs for the defendants.

On the allegations of the bill the complainants are entitled to some relief, and the demurrers will, therefore, be overruled.

Let an order be entered accordingly.