99 A.2d 236 (1953)
BENNETT
v.
BREUIL PETROLEUM CORP. et al.
Court of Chancery of Delaware, New Castle.
August 11, 1953.
*237 Aaron Finger, of Richards, Layton & Finger, Wilmington, Homer H. Woods, of Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., for plaintiff.
James R. Morford and William Marvel, of Morford, Bennethum & Marvel, Wilmington, and John H. Cantrell and Roy L. Sullivan, of McInnis, Cantrell, Thompson and Sullivan, Oklahoma City, Okl., for defendant Breuil Petroleum Corp.
James R. Morford, of Morford, Bennethum & Marvel, Wilmington, and C. A. McKenzie, Oklahoma City, Okl., for defendants James F. Breuil, Sr., Maxine M. Breuil, James F. Breuil, Jr., Alicia Breuil Lammerts and Leland K. MacFarland.
SEITZ, Chancellor.
By his complaint, plaintiff, William H. Bennett, seeks to cancel stock issued under a plan adopted by the requisite statutory vote. Plaintiff claims the plan is illegal because it constitutes an oppressive exercise by the majority stockholder of an admitted legal right. Plaintiff further claims that the stock sold under the plan was sold for a grossly inadequate consideration.
This was originally an action between the plaintiff and corporate defendant to restrain the issuance of stock under the plan and to prevent the defendant corporation from treating the plaintiff's option as terminated pending final decision. At the preliminary injunction argument it appeared that the stock had been issued prior to service of the restraining order. This court therefore filed a memorandum opinion deciding that since the relief requested could not be granted the restraining order should be vacated and the preliminary injunction denied. Before any order was entered on the opinion the plaintiff sought and obtained an order permitting him to amend his complaint, over objection, to convert it into a complaint for cancellation of stock. As a part of the amendment plaintiff added as parties defendant all the stockholders receiving the "new" stock. Thereafter counsel agreed to permit the restraining order to remain extant pending disposition of the corporate defendant's motions to dismiss and for summary judgment. Still later the individual defendants filed similar motions and adopted the corporate defendant's objections plus others. This opinion disposes of the motions of both the corporate and the individual defendants.
*238 The disposition of defendants' motions requires a rather long statement of the material facts. If the complaint sets forth a legally recognized claim for relief and if any material fact is in dispute, the defendants' motions must fall. Unless otherwise indicated the factual statement may be taken to have been admitted by the parties.
Prior to the adoption of the plan in dispute the corporate defendant, Breuil Petroleum Corporation, had authorized and outstanding 1,000,000 shares of $1 par value stock held as follows:

William H. Bennett (plaintiff)... 423,500
James F. Breuil, Sr.............. 562,000
Maxine M. Breuil (wife).......... 2,500
James F. Breuil, Jr. (son)....... 1,500
Alicia Breuil Lammerts (daughter) 1,500
Leland K. MacFarland............. 1,000
David D. Nash.................... 1,000
Warren Mundie.................... 2,000
Frederick Ott.................... 2,500
Mrs. Frederick Ott............... 2,500

Mr. and Mrs. Ott are not parties because they did not purport to exercise their option under the plan hereafter described. The defendant, James F. Breuil, Sr., is alleged to dominate and control the defendant corporation. Reference to "Breuil" will embrace only Breuil, Sr. Defendants deny any improper domination and control. The shares held by Breuil's wife, son and daughter were gifts from him. The defendant, Robert P. Lammerts, is his son-in-law and Leland K. MacFarland is a salaried employee of the defendant as well as being vice president, secretary and treasurer. The Board of Directors consists of Breuil and his wife, plus Robert P. Lammerts, Leland K. MacFarland and William H. Bennett. (Bennett's present status is clouded by his purported resignation.)
Plaintiff and Breuil were associated in business for many years. They organized the present corporate defendant in 1949 to engage in the production of crude oil. Plaintiff alleges and defendants deny that during the last few years relations between plaintiff and Breuil became strained; that plaintiff had difficulty in obtaining recognition in the corporate defendant's business; that Breuil's wife, son-in-law and MacFarland, as the other directors, have been completely responsive to Breuil's will. Defendants contend that plaintiff has failed, neglected and refused to take an interest in or become informed concerning the corporate defendant's problems.
Plaintiff claims that in 1951 Breuil offered to buy his stock and plaintiff indicated his willingness to sell. Defendants deny the offer but it is admitted that plaintiff gave Breuil a ninety-day option to purchase the stock for $1,250,000 payable in cash, amounting to about $2.95 per share. Plaintiff received $1,000 cash for the option. Plaintiff alleges that Breuil did not exercise the option because a government regulation pertaining to the borrowing of funds prevented Breuil from financing the purchase. Defendants say the option was allowed to expire because the price was too high. Later, about July 1952, plaintiff alleges that Breuil made another offer to plaintiff to buy his stock for $1,000,000 (about $2.35 per share). However, Breuil's offer provided that payment was to be made in fifteen year debentures of the corporate defendant bearing 4% annual interest and such debentures were to be subordinated to all other corporate obligations, future as well as present. Plaintiff alleges that he declined the offer because he felt that it was unfair. Defendants deny that any offer was made by Breuil. Plaintiff alleges and defendants deny that Breuil does not want him in the corporation.
At the annual meeting of the stockholders held March 3, 1953 a resolution was passed authorizing the directors to devise a plan to make available sufficient capital funds to relieve its critical financial condition in order to continue its existence. At the directors' meeting of the same date the chairman appointed a committee consisting of MacFarland and Lammerts to present such a plan. Plaintiff did not attend these meetings though he had notice thereof. Later he was sent minutes thereof.
Thereafter plaintiff received notice of a special meeting of the Board of Directors to be held March 16, 1953. He did not *239 attend. Later he was advised of a special meeting of the stockholders to be held March 27, 1953. Plaintiff was present by proxy. It appears that at these meetings, as a part of a financing plan, amendments to the certificate of incorporation were proposed and adopted changing the $1 par value of the 1,000,000 shares to 40¢ per share, reducing the capital account from $1,000,000 to $400,000, increasing the number of authorized shares to 2,000,000 shares with a par value of 40¢ per share, and denying stockholders' preemptive rights, except upon consent of and under terms granted by the holders of a majority of the stock. At the same time the stockholders authorized the issuance of stock rights to the record stockholders to purchase their pro rata share of the 1,000,000 additional shares of stock at 40¢ per share upon certain terms and conditions including a restriction that the rights or options were not to be transferable and had to be exercised within fifteen days.
The stated purposes for the issuance of additional shares was to relieve the corporation's critical financial condition by raising additional capital. Plaintiff admits, as did his proxy in opposing the action taken at the stockholders' meeting, that defendant is not in good financial condition as a producing company. But plaintiff claims that defendants' motive for issuing the new shares in the way described and for the price mentioned, was improper in that the majority deliberately caused the stock to be issued to impair plaintiff's interest and to force him out of the corporation upon the management's own terms. This is vehemently denied by defendants.
As a starting point it must be conceded that action by majority stockholders having as its primary purpose the "freezing out" of a minority interest is actionable without regard to the fairness of the price. See Allaun v. Consolidated Oil, 16 Del.Ch. 318, 147 A. 257; Bodell v. General Gas, 15 Del.Ch. 420, 140 A. 264. The corporate defendant and its controlling stockholders say that this is a sheer dispute over a matter of business judgment and is for the Board of Directors and stockholders to resolve, not the court.
Let us first consider which side has the burden and the extent thereof. I believe that plaintiff has the burden of proving bad faith or improper motive because I believe defendants are entitled to start with a presumption of good faith. I cannot agree with plaintiff that merely because Breuil is the controlling stockholder, the burden of showing good faith and proper purpose is shifted to the defendants. I say this because I do not believe that Breuil is on "both sides of the transaction" in the sense that he has an adverse personal interest. Compare Allied Chemical & Dye Corporation v. Steel & Tube Co., 14 Del.Ch. 1, 120 A. 486; Karasik v. Pac. Eastern Corporation, 21 Del.Ch. 81, 180 A. 604. However, on the merits due consideration will be given to Breuil's controlling position and interest.
Defendants say the plaintiff makes charges and does not set forth any facts. I cannot agree. It seems to me that plaintiff has set forth a legally recognized claim and the pleadings and affidavits have raised a substantial factual dispute as to the legal propriety of the motives of the corporate defendant and its controlling stockholder which can only be resolved by a hearing. See language in Steven v. Hale-Haas Corporation, 249 Wis. 205, 23 N.W.2d 620, 768.
Plaintiff's second grievance is that the shares have a value substantially in excess of 40¢ a share, to-wit, a value of $2.50-$3 per share. In support of this claim plaintiff points out that the corporate defendant's principal asset consists of the ownership of 525,784 shares of the capital stock of Kingwood Oil Company, being approximately 59% of the outstanding shares. The balance sheet of the defendant for 1952 shows that the Kingwood shares were carried on the corporate defendant's books at 65¢ per share but have a book value according to Kingwood's books of $3.88 per share. Moreover, Kingwood stock is selling over the counter at approximately $4 to $5 per share, although in small amounts. Plaintiff *240 alleges and defendants deny that the stock could be sold at a premium. Plaintiff also emphasizes that the principal officers of Kingwood are substantially the same as the corporate defendant's and that the Kingwood operations are under the control of Breuil.
The following quotation from the minutes of the stockholders' meeting referring to statements by the corporate representatives probably best states defendants' position on this point:
"Mr. MacFarland and Mr. Sullivan referred to the losses suffered by the Corporation from its inception, the uncertainty and hazards of the oil production industry, the sharp decline in Kingwood's production during the last two years and the fact that no market exists for Breuil Petroleum Corporation stock and they stated that, considering all factors, they believed the price to be fair. They further stated that no stockholder should complain as each stockholder was offered shares on the basis of one for one at the par value price."
It would serve no useful purpose at this stage to enter into a protracted and detailed summary and analysis of the various affidavits filed. They raise a serious and substantial question as to whether or not the 40¢ per share stock price was not grossly inadequate. This conflict cannot be fairly resolved by this court on a motion for summary judgment.
The complaint does not charge fraud in so many words but it alleges that the price is more than six times less than its fair value. This charge when considered in conjunction with the affidavits and the surrounding circumstances certainly makes out, pleading-wise, a case of constructive fraud. See Allied Chemical v. Steel & Tube Co., 14 Del.Ch. 1, 120 A. 486; Karasik v. Pac. Eastern, supra; Diamond State Brewery v. De La Riguadiere, 25 Del.Ch. 257, 17 A.2d 313. I conclude that plaintiff need not show actual fraud. But it will be plaintiff's burden to show constructive fraud at the trial.
I cannot agree with defendants' contention that 8 Del.C. § 152, making the directors' judgment as to the value of property, etc., received for stock conclusive in the absence of a showing of actual fraud, applies to this case. I say this because that Section deals with the judgment of the directors as to the value of property received for stock. Our case involves the value of stock issued for cash.
Defendants also say that 8 Del.C. § 157, which authorizes the issuance of rights and options, applies to the rights here involved. Defendants point out that this Section was amended July 8, 1953 to require a showing of actual fraud in order to upset the judgment of the directors as to the value of rights or options so authorized. The statutory amendment came after this action was filed. Even if we assume that it is retroactive, nevertheless, 8 Del.C. § 157 is not pertinent to the question of the value placed on the shares themselves  the issue here. It applies to the value placed on the rights, apart from the stock itself  not the issue here. Compare Gottlieb v. Heyden Chemical Corp., Del. Sup., 92 A.2d 594.
But defendants say plaintiff has not been injured, even assuming that the price is grossly inadequate, because he is being offered his pro rata share of the additional shares. This argument is wide of the mark. I say this because plaintiff has the right not to purchase as well as the right to purchase. But his right not to purchase is seriously impaired if the stock is worth substantially more than its issuing price. Any other purchase at that price obviously dilutes his interest and impairs the value of his original holdings. Defendants suggest that though he could not assign his right, he could borrow thereon. This does not impress me as being a substantial answer especially in the case, as here, of a closely held corporation where no dividends have ever been paid and *241 where plaintiff had only 15 days to decide. Compare Steven v. Hale-Haas, supra. A corporation is not permitted to sell its stock for a legally inadequate price, at least where there is objection. Plaintiff has a right to insist upon compliance with the law whether or not he cares to exercise his option. He cannot block a sale for a fair price merely because he disagrees with the wisdom of the plan but he can insist that the sale price be fixed in accordance with legal requirements.
Defendants insist that plaintiff's complaint is premature because the unsubscribed stock may not be issued illegally. The answer is that any subscription dilutes plaintiff's interest if he is correct in his contention concerning the value of the stock. Thus, if plaintiff is correct, Breuil's subscription alone shows injury.
The individual defendants also claim that the corporation may not issue par value stock at a price above par over stockholder objection. Thus they say the stock in issue could not have been issued at what plaintiff claims is its fair price. This argument is premised upon an aspect of the common-law preemptive rights doctrine adopted in some states. See 13 Am.Jur. Corporations, § 190. Under the amendment here validly adopted the preemptive rights are now only of such a character as the majority of the stockholders see fit to give. Therefore, assuming but by no means deciding that the rule contended for by defendants would be applicable in Delaware despite our statute,[1] and prior decision,[2] the fact remains that this judicially created characteristic of preemptive rights was abolished by the stockholders when they amended the charter. It can now afford the defendant stockholders no comfort.
Defendants also challenge plaintiff's right to maintain this action because they claim that plaintiff has improperly joined a personal action with a derivative one. Plaintiff claims that he is suing in his personal right and that this is not a derivative action. This is now a complaint for cancellation on two grounds, viz., issuance for improper purpose and for inadequate consideration. Assuming that the first ground is personal to plaintiff, nevertheless, I am persuaded that the second is derivative because cancellation of the "new" shares is sought to remedy a direct injury to the corporation consisting of the issuance of stock in violation of legal requirements as to consideration. See Ainscow v. Sanitary Co., 21 Del.Ch. 35, 180 A. 614; Sohland v. Baker, 15 Del.Ch. 431, 141 A. 277, 58 A.L.R. 693; Scully v. Automobile Finance Co., 11 Del.Ch. 355, 101 A. 908; Ellis v. Penn Beef Co., 9 Del. Ch. 213, 80 A. 666.
Proceeding on the assumption that the complaint asserts both a personal and a derivative cause of action, I am nevertheless unable to agree with defendants that the complaint is defective because of improper joinder. I believe Chancery Court Rules 18, 19 and 20 fully justify the joining of such actions and parties. The old doctrine of multifariousness has little application today.
It is not entirely clear whether defendant makes any point of the plaintiff's failure to comply with Chancery Court Rule 23(b) dealing with record stock ownership and prior demand on its directors, etc. If defendants desire to do so they should indicate that intention by a written communication to the court and counsel on or before August 21, 1953. If no writing is received it will be assumed that there will be no such objection. If such a writing is filed plaintiff may file his application, if any, with respect thereto on or before August 31, 1953.
It seems to me that the jurisdictional questions raised by defendants are resolved against them in Hodson v. Hodson Corp., Del.Ch., 80 A.2d 180. The same case shows that the fact that plaintiff also seeks additional relief by way of injunction *242 against the individual non-resident defendants does not oust the court of its statutory jurisdiction in this type of case. Indeed, one purpose of the statute is to compel an appearance. See 10 Del.C. § 365.
It follows that the defendants' motions to dismiss and for summary judgment must be denied.
Order on notice.
NOTES
[1] 8 Del.C. § 154.
[2] Grone v. Economic Life Ins. Co., Del. Ch., 80 A. 809.